Good morning. Anthony Broadman on behalf of Rabang. May it please the court. I would like to reserve three minutes. The issue on appeal in this case is whether the Holdovers and Dodge can avoid the reach of RICO because they allege this suit is an intratribal dispute. But RICO itself vests the district court with federal question jurisdiction. 18 U.S.C. section 1964 C states that jurisdiction lies in quote, any appropriate district court. If RICO applies, then the RICO jurisdictional designation under subsection C also applies. Neither the Tuscarora rule from the Supreme Court's decision in FPC versus Tuscarora Indian Nation, nor the intratribal dispute doctrine, take away the jurisdiction that 1964 C provides to the district court. And the Holdovers and Dodge don't really dispute that RICO is a federal law of general applicability. Counsel, what is the status of the other case, the Doucette case? The election challenge, Your Honor, is pending at this time. The case Summary judgment, cross motions for summary judgment There have been cross motions filed, Your Honor. Does it make sense to stay this appeal pending the outcome of that case? I don't think so, Your Honor, because the jurisdictionally relevant moment during what what we refer to as the RICO period is pretty clear. It was subject to the Nooksack versus Zinke case, which was filed in the Western District of Washington. Case number 17-219. In that case, the Holdovers attempted to go to court and have the district court recognize them as the as the governing body of the Nooksack tribe. The Western District of Washington said no, you're not. You are not the governing body of this tribe. The Holdovers failed to appeal that decision. The partner fact that is very critical there is that the 2016 determinations from the Department of the Interior about the Holdovers clearly stated they were not the governing body during the RICO period. Those decisions were never overturned. There was a special election later, but those decisions are still good direction from the Department of the Interior for the RICO period. So the Tuscarora rule really should be the beginning and the end of the court's analysis here. It dictates that federal laws of general applicability apply to tribes, Indians, in Indian country, unless the intramural self-governance exception is satisfied. So that means that the Holdovers would have to show that RICO interferes with exclusive rights of self-governance in purely intramural matters, and we know that it doesn't. First, the self-governance exception... Pardon me, counsel. Isn't disenrollment a purely intratribal issue? Of course, Your Honor. Disenrollment, every tribe has the ability to disenroll whether it's based on greed or an incorrect reading of a constitution. The disenrollment decision is unreviewable in federal court. And this court and the district court cannot make a reliable rule. That is not the relief that any of these litigants are seeking in the district court case. That is not relief that can be provided in the district court case. All that can be provided based on the second amended complaint are money damages. The self-governance exception can't... Before you go on, the district court would have to find that the members were, would have to find that essentially their membership was taken away wrongly, I guess, before they could assess the damages. No, Your Honor. And this is what makes this case different than any other case. So district courts in the Ninth Circuit look at Indian tribal membership every day. It's a basic tenet of Indian federal criminal law. That question is not off limits to district courts. The court can make a decision about whether somebody is a tribal member or not. What the court can't do is add somebody to a tribal role or take somebody away. And that's not what's being asked in the RICO case. Well, let me, because your time is short, so let me get to the heart of this. The district court said that at the heart of this case is a question about the disenrollment. And so as the court said, it's really a dispute about membership. And all of the actions taken leading up to the enrollment status, and you can't render a decision without reaching a question regarding enrollment status. Where's the error in that analysis? Well, we would respectfully disagree because, again, it does not require the court to make a decision that would end in enrollment or disenrollment. And it's admittedly carefully pled in order to comply with the RICO statute. All that is available at this moment are money damages. You do, the district court will not... Money damages arising, as Judge Mark has said, from the fact that the disenrollment was illegitimate. No, Your Honor. You can disenroll legitimately and still ask for money damages? The key is here is that the entity purporting to disenroll during the RICO period was not a tribal government. And that was determined definitively by Zinke, by Nooksack Tribe versus Zinke. The entity, this is a classic RICO case in that a legitimate organization, a formerly well-formed Nooksack Indian tribe were co-opted by racketeers, people who did not have the ability to make decisions on behalf of a tribal governing body. That was the result of Nooksack Tribe versus Zinke and the three determinations throughout 2016. It doesn't rely on the fact that somebody was correctly enrolled, incorrectly enrolled. It relies... This case stems from the fact that the people purporting to take these actions were not the governing body of the Nooksack Tribe. So the intramural self-governance exception is really as far as the court needs to go. You don't need to go to the inter-tribal dispute doctrine. And the most critical issue surrounding the self-governance exception is that it only applies when the tribe's decision-making power is usurped. But we know that the district court could not have usurped tribal decision-making power because there was no tribal government to usurp during the RICO period. Again, that was definitively established in the Zinke case. The second reason why the intramural exception can't apply is that RICO violations by those purporting to be a tribal government are not purely intramural. Just like the relief sought tests that you'll probably hear about in the sovereign immunity analysis, the relief sought here is not a declaration about who is a tribal member, who is not a tribal member, who is a governing body, who is not a governing body. And recognizing that they don't prevail under Tuscarora, the holdovers argue that the inter-tribal dispute doctrine takes back what RICO bestows, and that is not correct. Let's look very quickly with my last few seconds at what the court can't look at under the inter-tribal dispute doctrine. Smith v. Babbitt. It can't rule on a petition to a federal court to make a person a member. It can't rule on a petition to force the federal government to make a person a tribal member under Lewis v. Norton, and Awio v. Jewell, and Cotto v. Zduchky. It can't rule on a petition to make somebody a tribal leader. It can't resolve faction disputes. But as the district courts in the Ninth Circuit answer every day, it doesn't have to turn a blind eye to capacity questions. Like the Eleventh Circuit held in Miccosukee, capacity questions about whether an entity is acting in the scope of their tribal authority are questions squarely within the jurisdiction of this court. So you're saying that if they, if the district court finds that the governing council was not the governing council or was not, were not the people that should have made the decisions, then damages can be awarded? That would be a question of official, executive, or judicial immunity, which is how this case should be resolved. It should not be resolved by a district court putting its head in the sand because somebody alleges that there's an inter-tribal dispute. It should be done in an orderly fashion using executive privilege, legislative immunity, or judicial immunity. Thank you. I'll reserve the remainder of my time. Good morning, Your Honors. May it please the Court, Rob Roy Smith with Kilpatrick Townsend on behalf of the appellee Chief Judge Ray Dodge. I'll be spending my time this morning with Ms. Connie Sue Martin, who's representing the Kelly defendants. Judge Bea, your comment earlier this morning is exactly correct. This case is and always has been a matter of Nooksack internal tribal membership that has been artfully pled under RICO to create federal court jurisdiction. This case in that respect is on all fours with a case that Mr. Broadman mentioned, and that's the Eighth Circuit decision in Smith v. Babbitt at 100 F3rd 556. It's a 1996 decision of that court. There, the Eighth Circuit held that it lacked jurisdiction over RICO claims that were fundamentally based on a quote, scheme involving fraudulent tribal membership. There the issue was whether certain non-members were getting enrolled within the tribe, and that's at page 559 of that opinion. The Eighth Circuit noted that looking at the facts of that case, looking at what the alleged RICO scheme was, the plaintiffs were simply using RICO as a tool to move a case that should have been in tribal court to federal court. And the same holds true here. The court need look no further than Rabang's own words. In the second amended complaint, Rabang uses the terms enroll or disenroll no fewer than 56 times. And importantly, just like in Smith, the entire RICO claim is premised on the idea that the purpose of the RICO scheme was to quote, fraudulently deprive plaintiffs of their membership in the tribe. That's at ER 225 to 26. Let me ask you the same question I asked opposing counsel. Does it make sense to stay resolution of this case until the summary judgment motions are decided? I don't believe so, Your Honor. I think there's separate issues I would agree with Mr. Broadman on that point. To the extent that the second amended complaint is based on this fraudulent scheme to disenroll tribal members, the issue is dispositive. It doesn't matter about the relief that the plaintiffs are seeking in this case. Judge Marquez, your point is exactly right. To determine whether there was a RICO violation, if this case were remanded, the district court would have to decide whether the Rabang plaintiffs were lawfully disenrolled. And that is fundamentally a pure question of tribal law, over which the federal courts have no jurisdiction. Now, Mr. Broadman mentioned the Tuscarora rule a couple of times this morning, but it's never been the case, and it is not the case now, that Tuscarora or the fact that RICO is a statute of general applicability can overcome the fact that a federal court has an obligation, as a court of limited jurisdiction, to go back and consider its jurisdiction as a case proceeds. It is also not the case, and never has been the rule, that a statute of general applicability means that a federal court must hear a case no matter what, particularly in a situation like this, where we have a fundamental question of tribal law as the underlying issue in the alleged fraudulent scheme. The district court was clear from the very beginning of this case that its jurisdiction was temporary, and that it would end if and when the United States recognized a tribal council, and that was at ER 238 to 240. It was after careful consideration, and it was after the decisions of the Department of the Interior in 2018 to recognize the validity of the Nooksack Tribal Council, that the district court properly required Rabang to show cause as to why the case should proceed. The relevant documents in the record are found at KSER 223 and ER 47. Now, Rabang has suggested in the briefing, and Mr. Broadman indicated this morning, that the court in some way should disregard these 2018 decisions, in part because they didn't expressly overturn the 2016 letters from the prior administration that Rabang relies on. There's no case law for this novel proposition, and importantly, that argument also ignores the memorandum of agreement that was entered into between Robert Kelly and the United States in 2017, and that's at ER 142. Was that memorandum to correct the, essentially a settlement to correct those two years where the Nooksack Council was not legitimate? It was meant to correct the very issues that were identified by the 2016 letters that the plaintiffs rely upon. If you look at those three letters from then Assistant Secretary Larry Roberts, the two issues that are identified are the lack of a quorum and the lack of legitimate elections at the tribe, and the MOA was designed to fix both of those. Once those new elections were held, the Department of the Interior correctly recognized that this tribal council was legitimate, and the district court properly dismissed the case. So there's no question then that during that two-year time period, I believe it was a two-year time period, the council was not legitimate. That has been the decision of the United States. Now that there's a recognized tribal council, that tribal council has taken action to ratify certain actions that occurred during that period, which is absolutely within their authority as a tribal government. Thank you, Your Honor. If you have no further questions, I'll yield my time to Ms. Martin. Good morning, Your Honors. Connie Sue Martin on behalf of the Kelly Defendants. I want to start, Judge Marquez, with the question you just asked, and I want to challenge both your language and the language of Mr. Smith. The Nooksack Tribal Government was and has always been, even during the so-called RICO period, the legitimate government of the Nooksack Indian Tribe, because the determination of legitimacy is not by the United States, it is by the Nooksack Tribe, under Nooksack law. The Nooksack Indian Tribe is not bound by any determination by the Bureau of Indian Affairs as to who is the appropriate government for governance purposes, the inherent sovereign authority of the tribe. What the decisions that the United States made, which we argue certainly were erroneous, were with whom the United States would carry on its government-to-government relationship, and with whom would it direct federal funds. It did not make any determination of the legitimacy of the government itself. And indeed, the question of with whom the government maintains a government-to-government relationship is a completely separate legal question from the question of who the tribe is, and that's an issue that, Judge Beya, I believe you addressed in 2005 in a dissent in one of the U.S. v. Washington decisions. The question of whether the Samish tribe could exercise treaty rights was completely separate from whether or not the United States government recognized the tribe. A second contention that Rabang have made is that the Nooksack Indian Tribe v. Zinke definitively determined the illegitimacy of the government, the tribal government. There was no such determination. That was a motion to dismiss based on lack of standing. The fact that it wasn't appealed by the parties at the time is not a definitive determination that there was a government lacking during that period of time. There was always a federally recognized tribe and a government that was governing, and those governing bodies, in the course and scope of their authority as recognized by Nooksack law, disenrolled the Rabang plaintiffs and terminated their benefits. And it is those terminated benefits that Rabang would seek to recover now. In their second amended complaint, they allege that at ER 226, paragraph 155, they assert that the RICO scheme was to defraud Rabang of money, property, and benefits by fraudulently depriving them of their tribal membership. This case has always been about disenrollment and the artifice of saying that one can collect money damages without making a determination that there was a wrongful deprivation of the benefits that would quantify those damages is ridiculous. If you have to determine that a benefit has been wrongly denied, you have to determine that the Rabang plaintiffs should not have been disenrolled. That is immune from review by this court. That was immune from review by the Bureau of Indian Affairs. The Nooksack tribe decides who its members are and who are entitled to receive the benefits that are provided by the tribe. The Kelly defendants, in carrying out the disenrollment and the termination of benefits, acted in their official capacity. They are cloaked by the sovereign immunity of the tribe, which was never interrupted during the RICO period. There has always been a sovereign government at Nooksack, and that sovereign government and its governmental leaders and tribal department heads and tribal attorney and tribal court system are entitled to be shielded by the tribe's sovereign immunity. The remedy that Rabangs seek in their second amended complaint is declaratory relief, injunctive relief, the restoration of benefits. It is not just money damages that they claim. The disregard its disenrollment decision and disregard the termination of tribal benefits, or require action by the tribe to reverse its disenrollment decision and reverse its benefits decision, and indeed allow two of the plaintiffs to occupy tribally owned housing on trust land. That cannot be accomplished by the individuals, any more than the individuals accomplished the official action by the tribal government in disenrolling the Rabang plaintiffs. This case is and has always been about disenrollment, over which this court has no jurisdiction to decide, even when falsely clothed under the guise of a RICO suit. The Kelly defendants are shielded by the tribe's sovereign immunity for the official acts they took to disenroll Rabang and to deny them of their benefits. The court should affirm the dismissal of Rabang's and own sovereign immunity grounds. Thank you very much. We'll give you a couple of minutes for Robert Bonnell. Thank you, Judge Beyer. Just to be clear on the Zinke case, the court determined that the holdovers, the very litigants in this case, lacked standing to do anything on behalf of the Nooksack tribe. It held that they were not the governing body of the tribe. This is not just a case about benefits. This is a case about a home, homes, equity in homes, and whether or not individuals not acting on behalf of the Nooksack tribe, because they couldn't have been, had the ability to take those homes away. They co-opted a legitimate organization, a RICO enterprise, and took property, health care, and money from the second circuit. It tells us that while district courts can't make determinations about who is a governing body, once the BIA does, federal courts are able to look at that determination and rely upon it for making subject matter jurisdiction decisions. And that's all that needs to happen here. Turning very quickly to the sovereign immunity issue, because we were here recently arguing that issue, the holdovers dismissed that appeal after oral argument. It's not an issue after Lewis v. Clark. I'm surprised to see it again raised. Once, if you sue somebody in their personal capacity, sovereign immunity is not an issue. That's been the law of the land in the Ninth Circuit since before Lewis v. Clark. The problem with the intertribal dispute doctrine argument here is that it would exempt all alleged tribal governmental RICO from being taken over by racketeers. And if tribal governments are exempt from being enterprise victims of RICO because it would always raise intertribal issues, then they'd be uniquely situated among all of the American governments as one of the only entities that can be taken over by RICO without being subject to the law. And that has to be inconsistent with RICO and Tuscarora. Thank you very much.
judges: Bea, Nguyen, Marquez